| UNITED STATES DISTRICT COURT | C/M |
| EASTERN DISTRICT OF NEW YORK | |

---------------------------------------------------------- X
KECIA KEMP,                                       :
                                                  :
                  Plaintiff,  :   **MEMORANDUM DECISION &**
                                                  :   **ORDER**
      - against –                         :
                                                  :   17 Civ. 1020 (BMC)
                                                  :
CHAUNCEY HENRY,                                   :
                                                  :
                  Defendant.  :
---------------------------------------------------------- X

**COGAN**, District Judge.

    Defendant has moved to dismiss the amended complaint of plaintiff *pro se* on the grounds that plaintiff's claims are frivolous, the Court lacks subject matter jurisdiction, and plaintiff intentionally misrepresented her finances on her *in forma pauperis* ("IFP") application. For the reasons stated below, defendant's motion is denied.

    Familiarity with the facts as set out in this Court's March 1, 2017 Memorandum Decision and Order (the "Order") is assumed. In that Order, I granted plaintiff's motion for leave to proceed IFP, but dismissed plaintiff's complaint for lack of subject matter jurisdiction, finding that although diversity of citizenship existed between the parties, plaintiff failed to meet her burden to establish that she could recover $75,000 in this action. Due to plaintiff's *pro se* status, the Court granted plaintiff leave to file an amended complaint to demonstrate that she is entitled to recovery in excess of $75,000.

    Plaintiff filed an amended complaint, providing additional factual details and attaching numerous exhibits regarding plaintiff's underlying case and her arrangement with defendant.[1]

---

[1] The amended complaint does not include some of the factual allegations contained in the original complaint. Although the amended complaint completely replaces the original complaint, in light of plaintiff's *pro se* status, the Court will consider the facts alleged in both

Significantly, in the amended complaint, plaintiff alleges that during her initial consultation with defendant, defendant provided her with a "verbal break down" of the monetary damages he was going to seek on her behalf. Plaintiff alleges that defendant informed her that he was aiming to recover "a million dollars" from the New York City Department of Health, the defendant in plaintiff's underlying case. The inference is clear that it was upon this representation that she retained him.

First, defendant argues that plaintiff's claims, which he characterizes as merely constituting a "fee dispute," are frivolous. He has mischaracterized her claims, and his argument is meritless. Plaintiff's allegations sufficiently state claims for legal malpractice, negligent misrepresentation, fraud, and conversion.

Plaintiff alleges that defendant failed to discuss his strategy with her or consult her prior to submitting papers to the court, concealed documents and information about her case, and told her that "he did not need to speak [with her]." An attorney has a duty to "advise his client" and "keep his client well informed and furnish [her] with all information material to [her] cause." Hatfield v. Hertz, 109 F. Supp. 2d 174, 185 (S.D.N.Y. 2000) (internal quotation marks and citations omitted). Plaintiff's allegations regarding defendant's failure to communicate with her state a claim for malpractice.

Additionally, plaintiff clearly alleges that defendant solicited her by mailing her his portfolio, and that after an initial consultation, for which he charged plaintiff $75, she agreed to a $5,000 retainer. If defendant solicited plaintiff and accepted a $5,000 retainer with no belief that the underlying case had merit, let alone that it was worth "a million dollars," that could constitute not only legal malpractice, but negligent misrepresentation or fraud.

---

pleadings and interpret them to raise the "strongest arguments that they suggest." See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-76 (2d Cir. 2006).

Clearly, something in the underlying case went wrong for plaintiff, since the defendant's motion to dismiss that case was granted. Defendant, in advising her of how he could help if she retained him, either misjudged the case or misrepresented its strength to get the retainer, or he later unreasonably abandoned it. A misjudgment of a case's value is not necessarily legal malpractice, but it may be. And a misrepresentation as to value could be actionable as negligence, or as fraud if intentional.

If the case did have value, then there should be an explanation as to why the representation ceased after plaintiff's underlying case was dismissed – because that was not the end of the story. According to the amended complaint, defendant blamed the dismissal of the underlying action on the Court, but defendant never sought to move for reconsideration, nor is he representing plaintiff on the appeal, which she is pursuing *pro se*.

Equally noteworthy, besides failing to appeal, defendant has also failed to take any other steps to prosecute plaintiff's claims that, in the absence of negligence or fraud, he must have believed had sufficient value for him to accept a retainer. This Court only dismissed plaintiff's Family and Medical Leave Act claim with prejudice. Her Title VII claim was dismissed for failure to exhaust, and thus could have been pursued upon exhaustion. (There may have been time bar problems, but that is something else of which defendant arguably should have been aware.) Her state law claims, which have no exhaustion requirement, were dismissed without prejudice to pursuing them in state court. See Kemp v. City of New York Dep't of Health, 16-cv-1080(BMC) (Dkt. No. 29) (E.D.N.Y. Feb. 4, 2017).

So what was it that caused defendant to think that plaintiff had a good enough case to take a $5,000 retainer, but not good enough to pursue after what he contends was not only an erroneous dismissal, but a dismissal of federal claims that could have been pursued after

exhaustion, or in state court without exhaustion? Although this Court cannot find any facts at this preliminary stage of the case, plaintiff's allegations, affording to her the special solicitude of her *pro se* status, see Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010), are consistent with a scenario in which defendant found plaintiff's case on the *pro se* docket, told her whatever he had to tell her to take a $5,000 retainer from her, and then walked away from her. For these reasons, the pleadings more than adequately state claims to relief.

Second, defendant argues that subject matter jurisdiction under 28 U.S.C. § 1332 is lacking because the amended complaint fails to demonstrate that plaintiff can reasonably recover $75,000 in punitive damages, let alone the $300,000 that she seeks. I reject this argument.

A plaintiff properly invokes § 1332(a) jurisdiction where there is diversity of citizenship and the amount in controversy exceeds the jurisdictional amount, which is currently $75,000. See Arbaugh v. Y & H Corp., 546 U.S. 500, 513 (2006). If a defendant challenges the amount in controversy, "[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). In determining the amount in controversy, the court may consider "bona fide claims for punitive damages." Miller v. European Am. Bank, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996) (citing Bell v. Preferred Life Assurance Soc'y of Montgomery, ALA., 320 U.S. 238, 240 (1943)). Under New York law, a plaintiff may recover punitive damages for claims of legal malpractice, fraud, and negligent misrepresentation where "the defendant's conduct evinces a high degree of moral turpitude and demonstrates such wanton dishonesty as to imply a criminal indifference to civil obligations," Hutchins v. Utica Mut. Ins. Co., 107 A.D.2d 871, 873, 484 N.Y.S.2d 686, 688 (3d Dep't 1985); see also Cohen v. Kachroo, 115 A.D.3d 512, 514, 981 N.Y.S.2d 711, 713 (1st Dep't 2014).

Although plaintiff only specifically references punitive rather than compensatory damages, the amended complaint can reasonably be read as also alleging injury due to the loss of plaintiff's underlying claim. In a legal malpractice case, where the injury suffered is the loss of a cause of action, the usual measure of compensatory damages is the value of the claim lost. See Campagnola v. Mulholland, Minion & Roe, 76 N.Y.2d 38, 42, 556 N.Y.S.2d 239, 241 (1990). Therefore, in light of plaintiff's *pro se* status, and the Court's obligation to construe the complaint in the light most favorable to her, I will consider the value of her underlying claim as part of the total amount in dispute in this action.

The value of plaintiff's underlying claim, coupled with her demand for punitive damages in this action, is sufficient to satisfy the $75,000 jurisdictional requirement. Plaintiff alleges that defendant projected that she could have received $1 million in damages for her underlying claim. Even if this estimate was merely aspirational, and not probable, it is not unreasonable to infer that her underlying claim was worth at least $75,000.

As to her demand for punitive damages, if plaintiff proves that defendant, an attorney acting as a fiduciary to a previously unrepresented, indigent litigant, concealed information and documentation about her case, improperly took her money, and fraudulently induced her to retain his services, her claims could well give rise to punitive damages sufficient to reach the jurisdictional threshold, even if the underlying case had only nuisance value.

Third, defendant's claim that plaintiff intentionally misrepresented her monthly income and savings on her IFP application is meritless. First, there is no evidence that any incorrect statement, if there was one, was intentional. Indeed, the fact that plaintiff voluntarily attached her bank account records to the amended complaint precludes any claim that she intentionally misrepresented her financial status. Second, plaintiff filled out her IFP application in February

2017 and has since provided her bank account records for the period of November 2016 to February 2017. The fact that in one out of four months she received $3,341.45 in deposits, an amount greater than that which she indicated she receives monthly on her IFP application, does not mean that plaintiff misrepresented her usual monthly income.

Finally, even if plaintiff had indicated on her application that she had $1,800 in a bank account, as opposed to zero, I would still have found sufficient grounds to grant her IFP application. That asset level, with no income anticipated, is well within the asset level that qualifies for *in forma pauperis* status. See, e.g., Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948) (explaining that a plaintiff need not be "absolutely destitute" to proceed IFP); Potnick v. E. State Hosp., 701 F.2d 243, 244 (2d Cir. 1983) ("No party must be made to choose between abandoning a potentially meritorious claim or foregoing the necessities of life."); Fagan v. NYS OTDA, 16 CV 452, 2016 WL 792401, at *1 n.1 (E.D.N.Y. Feb. 26, 2016) (granting IFP status where the plaintiff had $4,400 in a savings account, but was unemployed and had substantial debts); Hobbs v. Cty. of Westchester, No. 00 Civ. 8170, 2002 WL 868269 (S.D.N.Y. May 3, 2002) (finding that the plaintiff, who had an income of $6,000 per year and personal assets totaling approximately $5,000, qualified for IFP status). There are no grounds for dismissal here. See id. at *1-2 (explaining that a plaintiff misrepresentations on the IFP application should only lead to dismissal where the allegations of poverty were untrue).

Accordingly, defendant's motion to dismiss is denied.

**SO ORDERED.**

                                                                  U.S.D.J.

Dated: Brooklyn, New York
       May 6, 2017